IN THE MAGISTRATE COURT OF FULTON COUNTY
STATE OF GEORGIA

RON LESLIE )
)
Plaintiff, )
)
)
) CIVIL ACTION NO.:
v. )
) 1:22-CV-4294
MICHAEL J. COHEN and )
NORTHSIDE LAW CENTER, LLC )
) JURY DEMAND
)
)
)
Defendants. )

## COMPLAINT

Comes now, Ron Leslie plaintiff, pro se, pursuant to O.C.G.A. § 9-2-61 moves the Court for entry.

This is an action for legal and equitable relief to redress the abuse of a disabled adult and to redress the discrimination in housing on the basis of disability. This action arises under The Fair Housing Act, 42 U.S.C. § 360, *et seq*. This action was originally filed in the Magistrate Court of Fulton County case 21MS156688 and dismissed April 26, 2022, but now, is being refiled in this court pursuant to O.C.G.A. § 9-2-61.

## BACKGROUND

1.

On August 15, 2019, the plaintiff hired the defendants to represent the plaintiff in an eviction case#19ED13285 in the Magistrate Court of Fulton County State of Georgia. On several dates prior to this trial, the plaintiff attempted to seek the defendant's counsel regarding the eviction. Additionally, the plaintiff sought the defendant's advisement regarding his potential counterclaims that the plaintiff had against his landlord for violations of the Fair Housing Act. It was only after the defendant's were hired by the plaintiff, the defendant's admitted they had no expertise in litigating Fair Housing Act claims. Because of this, the plaintiff requested via email for the defendant's to request a continuance during the eviction trial on August 29, 2019, for the plaintiff to find counsel that had more experience in litigating Fair Housing Act claims. Since the plaintiff did not want to lose any rights under the FHA, the defendant's agreed to request a continuance.

1.

However, On August 29, 2019, the plaintiff was a defendant (tenant) scheduled for a Dispossessory Case #19ED132854 in the Magistrate Court of Fulton County State of Georgia filed by the defendants. Both parties were ordered by the judge to participate in the Fulton County Landlord/Tenant Mediation Program. In this public setting, the plaintiff identified himself, as a person with disabilities pursuant to the Americans with Disabilities Act, to the defendants, to

the mediator, as well as the plaintiff's attorney. The Plaintiff requested, of the same participants, to decline mediation, and move forward with trial to request a continuance. The Plaintiff requested medical services and legal services before the court proceeding and during the mediation several times, however, the defendants, harassed the plaintiff outside of the courtroom, repeatedly denied the plaintiff's requests for a reasonable accommodation, and abused the plaintiff in an attempt to coerce the plaintiff to enter into an agreement that he did not feel comfortable entering.

2.

After dealing mediation, the plaintiff waited in the court room for his new trial date. However, the plaintiff was informed that his case was closed. Confused, the plaintiff called the defendants, but they did not answer. The plaintiff then texted the defendants to inquire why the defendants signed or entered into a consent agreement without the plaintiff's consent. The defendant's replied via text admitting to entering into the consent agreement without the plaintiff's permission.

2.

As the plaintiff's attorneys, the defendants had a duty to report and stop the exploitation and abuse of a disabled adult by the plaintiff's landlord before the court proceeding and during the mediation. As a result of the defendant's willful and intentional negligence, the plaintiff was held against his will, and the plaintiff

was entered into a consent agreement, by the defendants, to which he did not freely consent to or sign. This personal injury that the defendants caused the plaintiff has negatively impacted his credit worthiness, his options for living arrangements, his earning capacity, future lost earnings, plus his current and future medical expenses for his mental and physical health.

## DAMAGES

3.

The willful discriminatory actions of the defendants were taken in reckless disregard of plaintiff's rights under 42 U.S.C. § 3604f(1), and the defendants are liable to plaintiff's in the amount of $100,000 in punitive damages pursuant to 42 U.S.C. § 3613(c)(1).

4.

Defendants violated 42 U.S.C. § 3604(f)(2) as set out herein by placing conditions on plaintiff sole because of his disabilities that were not placed on other residents.

5.

At all times, the Defendants violated 42 U.S. Code § 3604(f)(3)(B) as set out herein by refusing to respond to and make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford the plaintiff an equal opportunity to use and enjoy the defendant's dwelling.

In circumstances like these, courts have held that a failure to respond can operate as a rejection of the request. Similarly, an "undue" delay can amount to a rejection.

20.

Defendants violated O.C.G.A. § 16-5-100(6) as set out herein by exploiting the plaintiff.

21.

The willful actions of the defendants were taken in reckless disregard of the plaintiff's status as a disabled adult as defined by O.C.G.A. § 16-5-100(3).

22.

The defendants are liable to the plaintiff in the amount of $50,000 in punitive damages pursuant to O.C.G.A. § 16-5-102(a).

23.

The defendants abused the plaintiff as defined by O.C.G.A. § 30-5-3(1). "Abuse" means the willful infliction of physical pain, physical injury, sexual abuse, mental anguish, unreasonable confinement, or the willful deprivation of essential services to a disabled adult or elder person.

24.

The willful actions of the defendants were taken in reckless disregard of the plaintiff's status as a disabled adult as defined by O.C.G.A. § 30-5-3(6). "Disabled adult" means a person 18 years of age or older who is not a resident of a long-term

care facility, as defined in Article 4 of Chapter 8 of Title 31, but who is mentally or physically incapacitated or has Alzheimer's disease, as defined in Code Section 31-8-180, or dementia, as defined in Code Section 49-6-72.

25.

The plaintiff is a disabled adult in need of protective services as defined by O.C.G.A. § 30-5-3(7). "Disabled adult in need of protective services" means a disabled adult who is subject to abuse, neglect, or exploitation as a result of that adult's mental or physical incapacity.

26.

The plaintiff is in need of essential services as defined by O.C.G.A. § 30-5-3(8). "Essential services" means social, medical, psychiatric, or legal services necessary to safeguard the disabled adult's or elder person's rights and resources and to maintain the physical and mental well-being of such person. These services shall include, but not be limited to, the provision of medical care for physical and mental health needs, assistance in personal hygiene, food, clothing, adequately heated and ventilated shelter, and protection from health and safety hazards but shall not include the taking into physical custody of a disabled adult or elder person without that person's consent.

27.

The defendants exploited the plaintiff as defined by O.C.G.A. § 30-5-3(9). "Exploitation" means the illegal or improper use of a disabled adult or

elder person or that person's resources through undue influence, coercion, harassment, duress, deception, false representation, false pretense, or other similar means for one's own or another's profit or advantage.

28.

The defendants neglected the plaintiff as defined by O.C.G.A. § 30-5-3(10). "Neglect" means the absence or omission of essential services to the degree that it harms or threatens with harm the physical or emotional health of a disabled adult or elder person.

29.

The plaintiff was denied protective services as defined by O.C.G.A. § 30-5-3(11). "Protective services" means services necessary to protect a disabled adult or elder person from abuse, neglect, or exploitation. Such services shall include, but not be limited to, evaluation of the need for services and mobilization of essential services on behalf of a disabled adult or elder person.

30.

Plaintiff engaged in protected activity by protesting what he perceived as discriminatory acts based on his disability.

31.

Defendants took adverse action against him because of plaintiff's disabilities.

32.

The Defendants committed legal malpractice against the plaintiff.

32.

The actions of the defendant as set out above were consumer acts or practices.

33.

The violations of the Fair Housing Act and it's Georgia counterpart were per se violations of the Georgia Fair Business Practices Act.

34.

The actions of the plaintiff violated the Georgia Fair Business Practices Act of 1975, because the defendants were attempting to collect money to which they were not entitled.

35.

As a proximate result of the defendant's actions, the plaintiff was damaged in the amount of $109,291.47 plus $150,000 in emotional distress damages.

36.

Because of the intentional nature of defendant's conduct, the plaintiff is liable for treble damages.

37.

Plaintiff is entitled to reasonable attorney fees.

WHEREFORE, Plaintiff prays for an award of $409,291.47:

1. For damages and violations as set out above;

2. For Actual Damages

3. For Punitive Damages

6. For Emotional Distress Damages

8. For Physical Distress Damages

10. For the consent agreement from Case #19ED13285 to be rescinded

11. For attorney fees and costs;

13. For such other and further relief as is just and proper

        Respectfully submitted this 26th day of October, 2022,

        /s/ Ron Leslie

        Ron Leslie, plaintiff pro se